IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JEFFERY R. GORDON, | § |
|     Plaintiff, | § |
| v. | § CIVIL ACTION NO. 5:13-CV-662-XR |
| | § |
| ACOSTA SALES AND MARKETING, | § |
| INC. | § |
|     Defendant. | § |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE ADMINISTRATIVE JUDGE**

NOW COMES Plaintiff, Jeffery R. Gordon ("Gordon" or "Plaintiff"), and respectfully files this, his Response to Defendant's Motion for Summary Judgment, and would show the Court the following.

## I. BACKGROUND

1.     Plaintiff Gordon sued Defendant Acosta Sales and Marketing, Inc. as detailed in Plaintiff's Original Complaint.  Plaintiff's claims are that he was subjected to unlawful discrimination based on his disability, denied a reasonable accommodation, and retaliation when Defendant, Acosta Sales and Marketing, Inc., (hereinafter either "Defendant" or "Acosta") denied the reasonable accommodation of transferring him to an assistant business manager position; his supervisor verbally accosted him; reduced his duties; and continued to subject him to a hostile work environment, which led to his resignation.

2.     Defendant filed its Motion for Summary Judgment on or about October 20, 2014.  In its Motion, Defendant avers that there is no evidence to support Plaintiff's cause of action, there was

no discrimination based on Plaintiff's disability, and that Plaintiff ended the interactive process to be considered for a reasonable accommodation when he quit his job, and that Defendant is entitled to Summary Judgment.

3.      Plaintiff filed and served this Response to Defendant's Motion for Summary Judgment on November 6, 2014, and by agreement of the parties is timely filed.

## II.  STATEMENT OF THE FACTS

4.      Plaintiff has a medical condition, edema, which causes significant swelling of his extremities. In order to control this condition, Plaintiff must take a diuretic, which causes the need for frequent urination throughout the 6 to 8 hours after taking the medication.  (Plt.'s Ex. 1A, pp. 143, 150).

5.      Plaintiff's position as a retail coverage merchandiser (RCM) requires him to travel between HEB grocery stores and his access to restrooms is limited because of the extensive travelling during the day. (Plt.'s Ex. 1, pp. 59, 61, 68).  Plaintiff was hired as a part-time employee in September 2012 and assigned to the "Purple team" to service his assigned stores. As early as October 23, 2012, Plaintiff determined that he was having problems because of his medical condition.  Between October and November 2012, Plaintiff informed his supervisor, Rudy Ramirez, of his condition and requested a transfer to the Defendant's San Antonio office to a position that gave him greater access to restroom facilities.  Plaintiff also explained that if he didn't take the medication he would suffer from edema swelling which was very painful and made it difficult to perform his job. Plaintiff testified that Ramirez seemed amenable to the idea of a transfer.  (Plt.'s Ex. 1, pp. 89, 90).

6.       In December 2012, Ramirez informed Plaintiff that a new employee, Mike Urdiales, who Plaintiff had helped train, was going to assume many of Plaintiff's duties including all of Plaintiff's responsibilities for Kraft products.  As a result, Plaintiff would have to begin visiting HEB stores that

were not normally his responsibility.  (Plt.'s Ex. 1, pp. 74-77, 81, 85-88).  No other employees had their duties changed to that degree because of their full-time status.  (Plt.'s Ex. 1, pg. 98; Plt.'s Ex. 1A, pg. 180).  On January 7, 2013, Plaintiff expressed to Ramirez in the form of an email his concerns about having been relieved of many of his responsibilities.  (Plt.'s Ex. 1, pp. 85-86; Plt.'s Ex. 2, depo ex. 3).  Following this email, on January 9, 2013, Ramirez confronted Plaintiff on the floor of HEB Store 622 in front of HEB employees and customers.  Ramirez was confrontational, tried to intimidate Plaintiff by cursing at him, and ordered Plaintiff to leave the store.  Plaintiff refused to leave the store, believing that if he did he would be fired.  (Plt.'s Ex. 1, pp. 89, 93-98; Plt.'s Ex. 3).

7.      Following this incident, Plaintiff sent a series of emails to David Osgood, Ramirez's supervisor, complaining of workplace harassment and hostile work environment, and requested a reasonable accommodation.  Plaintiff requested either a transfer to another retail team to take him from under Ramirez's supervision, or a transfer to an "in office" position in the local San Antonio office.  (Plt.'s Ex. 1, pp. 108-110; Plt.'s Ex. 2, depo exs. 4 & 5).  Plaintiff's emails also mention him pursuing charges with the Equal Employment Opportunity Commission (EEOC) because of the incident.  (Plt.'s Ex. 1, pp. 92-93; Plt.'s Ex. 2, depo ex. 4).  Plaintiff also sent the emails to Judy Conord, human resources, to inform HR of his complaints of discrimination.  (Plt.'s Ex. 1, pp. 98-99).  Ms. Conord informed Plaintiff that she would investigate his complaints.  (Plt.'s Ex. 1, pp. 104-05).  On February 5, 2013, Plaintiff met with Osgood, and Director of Retail, Harvey Shaner, to discuss Plaintiff's concerns. (Plt.'s Ex. 1, pp. 114-16; Plt.'s Ex. 2, depo ex. 6). At the meeting Plaintiff was informed there would be no accommodation in the form of a transfer to a position within the San Antonio office; that there were no positions available; and that he would continue to

work for Ramirez.  Osgood assured Plaintiff that Ramirez would not retaliate against Plaintiff. (Plt.'s Ex. 1, pg. 116).  However, during the meeting Shaner made a comment to Plaintiff concerning his medical condition, accusing Plaintiff of lying during the hiring process about having his medical condition, and implied had Plaintiff revealed the nature of his medical condition he may not have been hired.  (Plt.'s Ex. 1, pp. 117; Plt.'s Ex. 1A, pg. 18).

8.     Following this failed meeting, Plaintiff contacted Judy Conord about the meeting and what had transpired.  In his email to Conord, Plaintiff reiterated his request for accommodation and identified a Business Manager Assistant position for which he was qualified and was available at that time in contrast to what Plaintiff was told at the meeting with Osgood and Shaner.  Plaintiff applied for the job on his own and was not hired for the position.  (Plt.'s Ex. 1A, pp. 120, 130-31, 132; Plt.'s Ex. 2, depo exs. 7 & 8).

9.     Following the meeting with Osgood and Shaner, Ramirez continued to harass Plaintiff by treating him differently than other employees through the scheduling process, and a lack of support normally given other employees in the performance of their duties.  (Plt.'s Ex. 1A, pp. 134-37; Plt.'s Ex. 2, depo ex. 9).

On March 23, 2013, Plaintiff submitted a letter from his physician requesting an accommodation and describing the medical condition which was the basis of the requested accommodation.  (Plt.'s Ex. 1A, pp. 149-150; Plt.'s Ex. 4).  Conord informed Plaintiff that he had access to bathroom facilities at the various stores in his current position, and the company would accommodate him by allowing him frequent breaks.  (Plt.'s Ex. 1A, pp. 151-52; Plt.'s Ex. 2, depo ex. 11).  Plaintiff did not believe this was a reasonable attempt to accommodate his medical condition. (Plt.'s Ex. 1A, pg. 152, 156).  Faced with the specter of continued harassment, the denial of a

reasonable accommodation and having been relieved from a significant part of his duties and responsibilities, Plaintiff felt he had no choice but to resign from his position.  Plaintiff submitted his resignation on March 27, 2013, citing the hostile work environment, and the failure to accommodate as reasons for his resignation.   (Plt.'s Ex. 1A, pp. 157-58; Plt.'s Ex. 2, depo ex. 12).

## II. SUMMARY JUDGMENT STANDARD

10.      In reviewing a summary judgment, the court must review the facts drawing all inferences most favorable to the party opposing the summary judgment motion.  ***Hassan v.  Lubbock In dependent School District***, 55 F.3d 1075, 1078 (5th Cir. 1995).  Summary judgment is appropriate only if the evidence shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c);  ***Faruki v. Parsons S.I.P., Inc.***, 123 F.3d 315, 318 (5th Cir. 1997).  The movant must demonstrate the absence of a genuine issue of material fact.  ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986).  If the movant does so, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a "genuine issue for trial."  ***Little v. Liquid Air Corp.,*** 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. FRAMEWORK IN TITLE VII/ADA CLAIMS

### A.      Disability Discrimination

11.      In order to establish that the Americans with Disabilities Act (ADA) has been violated, courts utilize the burden shifting framework established in ***McDonnell Douglas Corp.  v. Green***, 411 U.S. 792 (1973) and ***Texas Department of Community Affairs v. Burdine***, 450 U.S. 248 (1981) to infer discriminatory motive on the basis of circumstantial evidence.  Under the *McDonnell Douglas-Burdine* framework, an ADA plaintiff has the initial burden of proving a *prima facie* case of discrimination by the preponderance of the evidence.

5

12.     In order to establish a *prima facie* case of disparate treatment based on disability, the plaintiff must show: (1) he is a disabled person within the meaning of the Act; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) an adverse employment decision was made because of his disability.  ***Burns v. Coca-Cola Enterprises, Inc.***, 222 F.3d 247, 253(5th Cir. 2000). Once a *prima facie* case is established, the defendant must clearly articulate a legitimate non-discriminatory reason (LNDR) for the adverse employment action taken against plaintiff.  ***Nieto v.  L&H Packing Co.***, 108 F.3d 621, 623, fn.5 (5th Cir.  1997).  If defendant is able to clearly articulate a LNDR, then the burden shifts back to plaintiff to show that the legitimate non-discriminatory reason is pretextual for defendant's  intentional discrimination based on plaintiff's membership in a protected class.  ***Id.***

      B.     Retaliation

13.     In order to establish a claim for retaliation a plaintiff must be able to show that (1) he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. ***Byers v.  Dallas Morning News, Inc.***, 209 F.3d 419, 427 (5th Cir.  2000).  A protected activity is when an employee has (1) opposed any unlawful employment practice; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.  ***Id.*** at 427-28.  Retaliation requires that the Plaintiff have engaged in a protected activity and that as a result of his participation in that protected activity, the employer retaliated against him through the implementation of an "materially adverse employment action," which may include an adverse transfer, reassignment of job duties, demotion, termination, denial of pay raises or merit raises, and may have the effect of dissuading a reasonable worker from making or supporting a charge

of discrimination.  *See Burlington Northern & Santa Fe Railway Co. v. White*, ---U.S.---, 126

S.Ct. 2405, 2415-16 (2006).  This would also include a hostile work environment based on

retaliatory harassment.  *See Noviello v. City of Boston*, 398 F.3d 76, 92-93 (1st Cir. 2005); *see*

*also Von Guten v. Maryland*, 243 F.3d 858, 864-65 (4th Cir. 2001); *and Ray v. Henderson*, 217

F.3d 1234, 1244-45 (9th Cir. 2000).

Finally, courts have held that temporal proximity is an indication of a causal connection

between an employee's protected activity and the adverse employment action.  *See Swanson v.*

*General Services Administration*, 110 F.3d 1180, 1188 (5th Cir. 1997).  Courts have held that

four months is soon enough to raise the question of retaliatory motive.  *See e.g., Evans v. City of*

*Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

C.    Disability Harassment

14.    To establish a *prima facie* case of hostile environment based on disability harassment, the

plaintiff must show that:  1) plaintiff had a disability; 2) plaintiff was subjected to unwelcome

harassment; 3) that the harassment was based on his disability; 4) the harassment complained of

affected a term, condition or privilege of employment, i.e., the harassment must be sufficiently

pervasive so as to alter the conditions of employment and create an abusive working

environment; and 5) in the case of coworker harassment–that the employer knew or should have

known of the harassment in question and failed to take prompt remedial action; or 6) in the case

of supervisor harassment-that the harasser was a supervisor and the harassment resulted in a

tangible employment action.  *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998);

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1998)*; Harris v. Forklift Systems, Inc.*, 510

U.S. 17, 21, 114 S.Ct. 367, 370-71 (1993); *Nash v. Electrospace System, Inc.*, 9 F.3d 401, 403

(5th Cir. 1993); *Castro-Medina v. Proctor & Gamble Commercial Co.*, 565 F.Supp.2d 343, 377

(D. Puerto Rico 2008).

The requirement for harassment to reach the level of hostile work environment is both a

subjective requirement and an objective one; one that a reasonable person would find hostile or

abusive, and one that the victim did in fact perceive to be so.  *Indest v.  Freeman Decorating, Inc.*,

164 F.3d 258, 263 (5th Cir 1999).  In determining whether conduct rises to this level, the "totality of

the circumstances" must be considered.  In this regard, one should consider "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating; and whether

it unreasonably interferes with an employee's work performance."  Workplace harassment is

actionable when the workplace is permeated with discriminatory intimidation, ridicule, and insult

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment.  *Id*. at 264; *see also* *Oncale v. Sundowner Offshore Services, Inc.*,

523 U.S. 75, 81(1998); *Harris*, 510 U.S. at 21.

      D.    Reasonable Accommodation

15.    A "reasonable accommodation" is a modification or adjustment to a job, the work

environment, or the way things usually are done that enables a qualified individual with a

disability to enjoy an equal employment opportunity.

A reasonable accommodation may include:

a.    making existing facilities used by employees readily accessible to and usable by
individual with disabilities; or

b.    Job restructuring, part-time or modified work schedules, reassignment to a vacant
position, acquisition or modification of equipment or devices, appropriate
adjustment or modification.  42 U.S.C. §12112.

c.    an "undue hardship" is an accommodation that requires "significant difficulty or
expense" in relation to the size of the employer, the resources available, and the
nature of the operation.  An employer not required to make a reasonable

accommodation if it would impose an undue hardship.  Some of the factors considered to determine if a requested reasonable accommodation is an undue hardship include if it is unduly costly, extensive, substantial, disruptive, or fundamentally alters the nature or operation of the business.  29 C.F.R. §1630.9(a).

The employee with the disability has the responsibility to inform the employer that an accommodation is needed.  29 C.F.R. §1630.9, App. (1995).  Once such a request is made, the appropriate reasonable accommodation is determined through a flexible, interactive process that involves both the employee and the employer.  ***Id.***  The employee's initial request for an accommodation triggers the employer's obligation to participate in the interactive process.  ***See Cutrera v. Board Of Supervisors of Louisiana State University***, 429 F.3d 108, 112 (5th Cir. 2005).  However, when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.  ***Id.***

      E.    <u>Constructive Discharge</u>

16.    The courts have held that there are two ways to prove constructive discharge.  First, the plaintiff must prove that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." ***Landgraf v. USI Film Products***, 968 F.2d 427, 429 (5th Cir. 1992).  Furthermore, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment which only requires "aggravating factors." ***Id.*** at 430.

Alternatively, in order to show constructive discharge, a plaintiff must show that the Defendant offered him a "Hobson's Choice" of equally intolerable options, either of which would have caused him to be worse off than the *status quo*.  ***Mitchell v. Mobil Oil Corp.***, 896 F.2d 463, 467-68 (10th Cir. 1990).

## IV. ARGUMENT AND AUTHORITIES

### A.      Establishing an ADA Claim- Qualified Individual with a Disability

17.      In order to fall within the protection of the ADA, a person must be considered a qualified individual with a disability one of three ways: (1) plaintiff has a physical or mental impairment that substantially limits a major life activity; (2) plaintiff has a record of such impairment; or (3) plaintiff was regarded to have had a such an impairment.  42 U.S.C. §12102(2); *see also Washington v. HCA Health Services of Texas, Inc.*, 152 F.3d 464, 467(5th Cir. 1998).

Physical or Mental Impairment that Substantially Limits a Major Life Activity

18.      The ADA Amendments Act of 2008 (ADAAA) restored the broad definitions intended by Congress when the ADA was enacted in 1990.  Sec. 2(a)(4)(7) & (b)(3), Pub.L.No. 110-325, 122 Stat. 3553, 3559 (2008).  The ADAAA Amendments specifically state that "major life activities" include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.  ADAAA Definition of Disability, Sec. 3(2)(A).  In addition, the 2008 Act includes major bodily functions as major life activities, to include functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.  ADAAA Definition of Disability, Sec. 3(2)(B).  Only one major life activity needs to be impacted.  The first inquiry is whether there is an impairment.  An impairment is defined as a physiological or psychological disorder affecting a body system or systems.  *See* 29 C.F.R. §1630.2(h)(1).

The issue of whether an impairment substantially limits a major life activity depends on the effect of the impairment and its (1) nature and severity; (2) its duration or expected duration;

and (3) its permanent or expected long term impact. 29 C.F.R. §1630.2(j)(2).  The ADAAA also states that the determination of whether an impairment substantially limits a major life activity shall be made ***without*** [bold and italics added] regard to the ameliorative effects of mitigating measures such as medication.   ADAAA Sec. 4(a) & 4(E)(i)(I).

### B.    Plaintiff can Establish a Prima Facie Case of Discrimination under the ADA

### 1.    Plaintiff was a qualified individual with a disability under the ADA

19.    Plaintiff was a qualified individual with a disability under the ADA because he has an actual disability.  In 2001, Mr. Gordon was diagnosed with edema, a condition that causes his extremities to swell quite painfully if not controlled.  This is a permanent condition affects a major life activity by preventing Mr. Gordon from being able to walk, stand, lift, if left untreated.  (Plt.'s Ex. 1A, pg. 167, 219-221; Plt.'s Ex. 2, depo ex. 13, pg. 3).  Mr. Gordon is prescribed Furosemide to control the edema; however, a side effect of the Furosemide is that it causes frequent urination.  (Plt.'s Ex. 1A, pp. 143, 150).  In October and November 2012, soon after his hire as a RCM, Mr. Gordon informed his supervisor of his condition and the need for an accommodation in the form of a position that allowed greater and more frequent access to bathroom facilities.  (Plt.'s Ex. 1, pp. 89, 90).

20.    Mr. Gordon testified that he was able to perform all of the essential functions of his job with the edema and the medication to control that condition.  (Plt.'s Ex. 1, pp. 89-90; Plt.'s Ex. 1A, pg. 131).  However, the edema caused Mr. Gordon pain as he performed his job as a RCM, and the issue of his need for greater access to bathroom facilities became more apparent after Plaintiff began to perform his duties as a RCM, which involved traveling fairly long distances between HEB stores on a daily basis.  (Plt.'s Ex. 1, pp. 89; Plt.'s Ex. 1A, pp. 176-78).  Plaintiff

had a conundrum when taking his medication to ameliorate his edema.  As Plaintiff described it,

if he used the medication to reduce the swelling he might not be able to perform the job because

of the frequency of the need to urinate; and in contrast, if he reduced the medication or changed

the time that he took it during the day, he would experience the painful swelling of his

extremities and that would interfere with his ability to do the job of RCM.  (Plt.'s Ex. 1, pp. 89;

Plt.'s Ex. 1A, pp. 221-23).  On March 22, 2013, Plaintiff's physician, Dr. Quiroz, issued a letter

requesting that Mr. Gordon be granted a reasonable accommodation that included greater access

to bathrooms during the day.  (Plt.'s Ex. 1A, pp. 149-150; Plt.'s Ex. 4).  Mr. Gordon is a qualified

individual with an actual disability under the ADA who required a reasonable accommodation in

order to continue to work for Defendant.

      2.   <u>Mr. Gordon Suffered an Adverse Employment Action Because of his Disability</u>

21.    Courts have held that "an adverse employment action" includes actions by the employer

egregious enough to affect a term or condition of employment.  *See **Picard v. St. Tammany***

***Parish Hospital***, 611 F.Supp.2d 608, 619 (E.D. La. 2009) *citing **Minor v. Centocor***, 457 F.3d

632, 634 (7th Cir. 2006).  Such adverse employment actions may include hostile work

environment based on the plaintiff's disability or failure to accommodate a request for reasonable

accommodation.  *See **Picard***, 611 F.Supp.2d at 619-20.

      3.   <u>The Defendant Failed to Provide a Reasonable Accommodation for Plaintiff</u>

22.    Once the employee has identified the need for a reasonable accommodation, it is up to the

employee and employer, with the input of the medical provider, to create a reasonable

accommodation.   ***Taylor v. Principal Financial Group, Inc.***, 93 F. 3d 155, 165 (5th Cir. 1996).

 However, the employer is not obligated to provide the employee the accommodation she

requests or prefers.  The employer only needs to provide a reasonable accommodation.  ***Scheer v. City of Cedar Rapids***,  956 F. Supp. 1496 (N.D. Iowa 1997); ***EEOC v. Newport News Shipbuilding & Drydock Co.***, 949 F. Supp. 403 (E.D. Va. 1996).

23.     Plaintiff requested a reasonable accommodation for his edema and the side effects of the medication of greater access to bathroom facilities than what was possible while performing his duties as a RCM.  (Plt.'s Ex. 1, pp. 89-90, 114-16; Plt.'s Ex. 1A, pp. 120, 130-31, 132; Plt.'s Ex. 2, depo exs. 7 & 8).  Specifically, Plaintiff requested a position as an assistant business manager in San Antonio, an inside job, which would allow greater access to restroom facilities.  (Plt.'s Ex. 1A, pp. 130-31, 132; Plt.'s Ex. 2, depo exs. 7 & 8).

Plaintiff entered into the interactive process with Defendant in October and November 2012, but his requests for an accommodation were ignored.  (Plt.'s Ex. 1, pg. 89-90).  It was not until he complained of a verbal confrontation with his supervisor that Defendant finally entertained his request for accommodation.  (Plt.'s Ex. 1, pp. 109-110; Plt.'s Ex. 2, depo ex. 5).

Plaintiff testifies that in his February 5, 2013, meeting with Osgood and Shaner, he was told he would not be accommodated.  (Plt.'s Ex. 1, pg. 116).  On March 22, 2013, Plaintiff's physician wrote a letter for Plaintiff to be delivered to Defendant requesting greater access to restroom facilities for Plaintiff as n accommodation.  (Plt.'s Ex. 1A, pp. 149-150; Plt.'s Ex. 4).  In response, in an email to Plaintiff, Judy Conord, told Plaintiff that the Defendant would not be putting him in a different position as an accommodation, but he had plenty of opportunity to use restroom facilities at each of the HEB stores, he could take more frequent breaks, and he could use restroom facilities en route to his stores.  (Plt.'s Ex. 1A, pg. 151; Plt.'s Ex. 2, depo ex. 11).

Defendant states in its Motion for Summary Judgment, that Plaintiff broke off the

interactive process by quitting his job.  (*See Defendant's Motion for Summary Judgment*, pp. 2, 5).  This is misleading.  It is clear from Ms. Conord's email that the interactive process was concluded from the Defendant's perspective and that Plaintiff either had to accept the accommodation offered him or quit.   (Plt.'s Ex. 1A, pp. 152, 156; Plt.'s Ex. 2, depo ex. 11).  The email did not state that the requested accommodation was an "undue hardship" for Defendant, and in fact, only stated Plaintiff was allowed to take more frequent breaks as his accommodation.  There was no alternative solution offered and no more room for discussion.  (Plt.'s Ex. 1A, pp. 152, 156; Plt.'s Ex. 2, depo ex. 11).

Defendant's failure to follow through on Plaintiff's request for a reasonable accommodation was in blatant disregard of the Act and its protection of disabled employees.  The Act requires that an employer engage in an interactive process when an employee requests a reasonable accommodation; and the employer is required to further investigate the employee's medical condition and consult with the employee's physician on constructing a potential accommodation.  *See Cutrera*, 429 F.3d at 112, 113; 29 C.F.R. §1630.2(o)(3).  The Defendant's failure to further inquire with Plaintiff's physician and to accommodate Plaintiff concerning his request for greater access to restroom facilities in the form of a transfer to an inside position constitutes a violation of the Act.  Therefore, Plaintiff has established a *prima facie* case of discrimination under the Americans with Disabilities Act.

### C.   Plaintiff Was Subjected to Ongoing Harassment and a Hostile Work Environment Based On His Disability

24.   Plaintiff is a member of a protected class: he is a qualified individual with a disability.  There is no dispute that Plaintiff has a disability as defined by the ADAAA.  Plaintiff testified he made his supervisor, Rudy Ramirez, aware that he had a disability as early as October 2012.  (Plt.'s Ex. 1, pp.

89-90).

25.     Ramirez continued to harass Plaintiff by treating him differently than other employees through the scheduling process, and a lack of support normally given other employees in the performance of their duties.  (Plt.'s Ex. 1A, pp. 134-37; Plt.'s Ex. 2, depo ex. 9).  More specifically, on February 15, 2013, Ramirez accused Plaintiff of not scheduling his stores, when Plaintiff had scheduled them for that week.  (Plt.'s Ex. 1A, pp. 133-34; Plt.'s Ex. 2, depo ex. 9).  Plaintiff also contends that the nature of the accusatory email was in tone, harassing.  (Plt.'s Ex. 1A, pp. 136-37; Plt.'s Ex. 2, depo ex. 9).

Plaintiff further complains that Ramirez did not provide him the same support as other RCMs, in that he did not keep Plaintiff informed through a lack of email notifications that other RCMs seemed to get, and did not properly train Plaintiff.  (Plt.'s Ex. 1A, pp. 182-84).

Although these incidents may not seem to rise to the level of harassment and a hostile work environment, the incident on January 9, 2013, certainly did rise to that level.  On that date, Ramirez verbally and physically confronted Plaintiff in HEB Store #622 in front of customers and other vendors.  (Plt.'s Ex. 1, pp. 89, 91-98; Plt.'s Ex. 2, depo ex. 4).  This confrontation was in response to an earlier email Plaintiff sent Ramirez about his concerns in losing the duties and responsibilities of the Kraft products, Ramirez sought out Plaintiff and verbally and physically confronted Plaintiff.  (Plt.'s  Ex. 1, pp. 91-98; Plt.'s Ex. 2, depo exs. 3 & 4).  Ramirez told Plaintiff, "I'm your fucking supervisor, I can tell you to do whatever I want."  (Plt.'s  Ex. 1, pg. 96; Plt.'s Ex. 2, depo ex. 4).  During his tirade, Ramirez made a reference to hiring Plaintiff and that if Plaintiff couldn't perform the job he should quit.  (Plt.'s Ex. 2, depo ex. 4).  This was after Ramirez was aware of Plaintiff's disability and his problems performing the job with the edema.  (Plt.'s 1 Ex., pp. 89-90).  Ramirez's

comments concerning Plaintiff and Plaintiff's ability to do the job can certainly be construed as comments against Plaintiff based on his disability.

The standard to determine if an environment is hostile based on harassment is both a subjective one and an objective one. Certainly Plaintiff believes that the harassment rose to the level of hostile work environment. In addition, another contractor who was present commented that Ramirez's conduct was wrong. (Plt.'s Ex. 3). This additional observation from Robert Martinez, a contractor from General Mills, certainly was influential in the subsequent action Defendant took against Ramirez. Therefore, the objective test is met. This one incident, by itself is severe enough to create a hostile work environment for Plaintiff.

Ramirez denied making that statement, or that there was even a confrontation, just a discussion. However, Judy Conord confirmed the event as Plaintiff had described it, and Ramirez was issued a written counseling letter. (Plt.'s Ex. 3). Based on the evidence, Plaintiff was subjected to a hostile work environment based on his disability.

## D. Defendant Subjected Plaintiff to Retaliation for Engaging in Protected Activity

26.     Plaintiff complained about Ramirez's treatment of him, particularly after the confrontation on January 9, 2013, and threatened to go to the EEOC with his complaints of discrimination. (Plt.'s Ex. 1, pp. 92-93; Plt.'s Ex. 2, depo ex. 4). This constituted a protected activity. Defendant's actions constituted "materially adverse" employment actions when Defendant denied Plaintiff's reasonable accommodation request. Courts have held that "an adverse employment action" includes actions by the employer egregious enough to affect a term or condition of employment. *See **Picard v. St. Tammany Parish Hospital***, 611 F.Supp.2d 608, 619 (E.D. La. 2009) *citing **Minor v. Centocor***, 457 F.3d 632, 634 (7th Cir. 2006). Such adverse

employment actions may include hostile work environment based on the plaintiff's disability or failure to accommodate a request for reasonable accommodation.   This would also include a hostile work environment based on retaliatory harassment.  *See Noviello v. City of Boston*, 398 F.3d 76, 92-93 (1st Cir. 2005); *see also Von Guten v. Maryland*, 243 F.3d 858, 864-65 (4th Cir. 2001); *and Ray v. Henderson*, 217 F.3d 1234, 1244-45 (9th Cir. 2000).

Finally, courts have held that temporal proximity is an indication of a causal connection between an employee's protected activity and the adverse employment action.  In this case, the denial of the accommodation occurred within two months of Plaintiff's protected activity.

Defendant retaliated against Plaintiff for having engaged in a protected activity by denying him a reasonable accommodation.

### E.   Defendant's Non-Discriminatory Reasons for Its Actions are Pretext for Discriminatory Conduct

27.    If the employer carries the burden of producing a legitimate, nondiscriminatory reason, then the plaintiff must show that more probably than not that the employer's actions were based on a pretext for discrimination.  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515-517 (1993).  For each of the claims above, the Defendant has provided some "legitimate non-discriminatory reason" for its actions, or in some cases flat out denied the incident occurred.  Certainly the evidence shows that Ramirez lied about the January 9, 2013, incident and was disciplined for his conduct.  When the weight of the credible evidence shows that management officials are not telling the truth, the fact finder may infer discrimination.

28.    There is direct evidence of this animus by Shaner in discussing Plaintiff's disability and whether the company would have hired Plaintiff had the company known of Plaintiff's disability, showing his animus towards Plaintiff specifically, and persons with disabilities in general.  (Plt.'s Ex.

1, pp. 117-18, 225-26).  There is also evidence of animus towards Plaintiff by Ramirez because of

Plaintiff's disability.  (Plt.'s Ex. 1, pp. 91-98; Plt.'s Ex. 2, depo ex. 4).

Direct evidence is evidence that, if believed, **proves** the fact of discriminatory animus **without**

inference or presumption.  *See **Rachid v. Jack in the Box, Inc.***, 376 F.3d 305, 310 fn.6 (5th Cir.

2004).  Intentional disparate treatment may be shown by the use of direct evidence that the employer

intentionally discriminated against the plaintiff based on unlawful reasons.  ***Mooney v. Aramco***

***Services Co.***, 54 F.3d 1207, 1217 (5th Cir.1995). To withstand an employer's motion for summary

judgment, a plaintiff-employee must present sufficient evidence, whether by direct or circumstantial

evidence or both, that she was discriminated against by the employer.  ***Acker v. Deboer, Inc.***, 429 F.

Supp. 2d 828, 837 (N.D. Tex. 2006).  Where a plaintiff provides direct evidence of discrimination,

then the McDonnell Douglas [burden-shifting framework] test is inapplicable.  *See **Trans World***

***Airlines, Inc. v. Thurston***, 469 U.S. 111, 121, 105 S.Ct. 613; *see also **Jones v. Robinson Property***

***Group***, 427 F.3d 987, 992 (5th Cir. 2005).

In that case, the court may infer discrimination based on the falsity of the employer's reasons

for its actions.  ***Reeves v. Sanderson Plumbing Products, Inc.***, 530 U.S. 133, 146, 120 S.Ct. 2097,

2108 (2000).  Additionally, evidence that the proffered reason is unworthy of credence must be

enough to support a reasonable inference that the proffered reason is false.  ***Bauer v. Albermarle***

***Corp.***, 169 F.3d 962, 967 (5th Cir.  1999); ***EEOC v.  Louisiana Office of Community Services***, 47

F.3d 1438, 1443-44 (5th Cir.  1995).

Shaner's comments that had Defendant known Plaintiff had his disability they may not have

hired him, and accusing Plaintiff of lying on his application are all indications of an animus towards

Plaintiff and his disability by Defendant management officials, therefore, the Court may infer

discriminatory intent and that the reasons given are pretext for discriminatory conduct.

### F.   Plaintiff Can Establish His Resignation was a Constructive Discharge

29.   The evidence is clear that Mr. Gordon could not continue to work for Defendant without

a reasonable accommodation.  (Plt.'s Ex. 1, pp. 89-90; Plt.'s Ex. 1A, pp. 220-223).  The

accommodation requested was to be moved to an administrative position that allowed Plaintiff

greater access to restroom facilities at a greater frequency than his current job as a RCM allowed.

(Plt.'s Ex. 4).  The accommodation requested by Dr. Quiroz was quite clear when she mentioned

Plaintiff's request for transfer to the "local office."  The letter describes the "significant" swelling

of the extremities and the need for frequent urination throughout the 6-8 hours after taking the

medication.  (Plt.'s Ex. 4).  Plaintiff testified that he took the medication in the morning with

breakfast, so the effects of the medication would last throughout the normal workday.  (Plt.'s Ex.

1A, pg. 221).  Furthermore, leaving no doubt about the accommodation request, Dr. Quiroz states

unequivocally that Plaintiff requires a position that puts him in close proximity to the bathroom

facilities.  (Plt.'s Ex. 4.)  This does not include Plaintiff's car.  This means a building where

restrooms are freely available, not where Plaintiff has to drive all over the countryside hoping to

get to a place where there is a bathroom available.  (Plt.'s Ex. 1A, pp. 151-53).  The offer of more

frequent breaks is, in fact, no offer at all, but a slap in the Mr. Gordon's face, and an indication

Defendant did not take his request for accommodation seriously. (Plt.'s Ex. 1A, pp. 151-53).  As

a result, Plaintiff felt he had no choice but to resign – this was the "Hobson's Choice" of one bad

situation, continuing as a RCM under severely adverse circumstances, or resigning.  Plaintiff

chose to resign.   (Plt.'s Ex. 1A, pp. 158-164).  There exist genuine issues of material facts

concerning Plaintiff's claims of discrimination based on his disability and retaliation.  Therefore,

Defendant's Motion for Summary Judgment should be denied.

## V.     CONCLUSION

The facts and evidence help to establish a prima facie case of harassment and a hostile work environment, and a failure to accommodate based on Plaintiff's disability, and in retaliation for engaging in protected activity.  Plaintiff's hostile work environment claims meet the standard for severe and pervasive.  The one incident alone of Rudy Ramirez verbally and physically assaulting Plaintiff is severe enough to have created a hostile work environment.  Ramirez's denial of the incident even in the face of two witnesses is evidence enough of the falseness of the Defendant's reasons for its actions and discriminatory conduct.

Plaintiff engaged in the interactive process for requesting and being granted a reasonable accommodation.  He provided enough medical evidence to support his claim.  Plaintiff is a qualified individual with a disability, the edema, which affects more than one major life activity. Plaintiff also showed he was able to perform his duties as a RCM with or without a reasonable accommodation, but also showed for the long-term that he would need a job that allowed him to be inside with easy access to restroom facilities.  Defendant denied that accommodation and as a result of the denial and the hostile work environment, Plaintiff had little choice but to resign.

In almost every instance, the Defendant's reasons for its actions are proven to be false and are pretext for discriminatory conduct towards Plaintiff.  The evidence creates a genuine issue of fact on Plaintiff's claims of discrimination and the Defendant's reasons for its actions. Therefore, the Court must deny the Defendant's Motion for Summary Judgment.

WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests that the Defendant's Motion for Summary Judgment be Denied.

Respectfully submitted,

FORTE & PITTARD, PLLC
1777 N.E. Loop 410, Suite 600
San Antonio, Texas 78217
Telephone:  (210) 678-3075
Telecopier: (210) 820-2609
Email: chrisp@forteandpittardlawfirm.com


By: /s/ R. Chris Pittard
R. CHRIS PITTARD
State Bar No. 00794465

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November 2014, I electronically filed the foregoing with the Clerk of Court using the CM/EMF system which will send notification of such filing to the following:

Kevin E. Hyde
Foley & Lardner, LLP
One Independent Drive, Suite 1300
Jacksonville, FL  32202-5017


/s/ R. Chris Pittard
**R. CHRIS PITTARD**

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JEFFERY R. GORDON, | § | |
|     Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 5:13-CV-662-XR |
| | § | |
| ACOSTA SALES AND MARKETING, | § | |
| INC. | § | |
|     Defendant. | § | |

## **ORDER**

ON THIS DAY, came on to be heard Plaintiff's Response to Defendant's Motion for Summary Judgment, and the Court having heard said Motion and Plaintiff's Response, is of the opinion and finds that said Motion should be DENIED.

It is therefore ORDERED, ADJUDGED and DECREED by the Court that Defendant's Motion for Summary Judgment is DENIED.

SIGNED and ENTERED this _____ day of _____, 2014.


_____
HON. XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE